UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                              :

RBM HOLDINGS LLC,               :
                              :

         Plaintiff,        :
                              :

     - against -        :       No. 18 Civ. 2085 (LAP)
                              :

AEGEAN MARINE PETROLEUM  :
NETWORK INC., GEORGE KONOMOS,  :
YANNIS PAPANICOLAOU, SPYRIDON  :
FOKAS, and KONSTANTINOS    :
KOUTSOMITOPOULOS,        :
                              :

        Defendants.      :
                              :
                              :
-------------------------------------------------------X


**DEFENDANT AEGEAN MARINE PETROLEUM NETWORK INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
RBM HOLDINGS' APPLICATION FOR A TEMPORARY
RESTRAINING ORDER AND EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND .......................................................................................................... 1

ARGUMENT .............................................................................................................. 3

1.   RBM's Request for a TRO Is Meritless and Should Be Denied. ........................... 3

2.   RBM's Proposed Schedule Unfairly Prejudices Aegean. ..................................... 7

3.   RBM's Motion for Expedited Discovery Should Be Denied................................... 8

CONCLUSION ........................................................................................................... 9

KL3 3161162.1

## PRELIMINARY STATEMENT

This action seeks to enjoin defendant Aegean Marine Petroleum Network Inc. from carrying out a $300-million-plus corporate acquisition that is vital to Aegean's interests.  This memorandum of law briefly outlines the reasons why Aegean opposes plaintiff RBM Holdings' application for a temporary restraining order and expedited discovery, and proposes a schedule for bringing this matter promptly to a hearing on a preliminary injunction.

As explained more fully below, the transaction was carefully considered and negotiated over many months.  It was reviewed and approved by a Special Committee of Aegean's independent directors advised by independent separate legal counsel, and two respected financial advisory firms issued opinions that the transaction was economically fair to Aegean and its shareholders.  The transaction confers substantial benefits on Aegean, and it is critical for the success of Aegean that the transaction close – and on time, before the transaction is subject to termination at will.

## BACKGROUND

Aegean is a Marshall Islands corporation based in Greece.  It is in the oil bunkering business – in major ports throughout the world, Aegean sells and delivers the fuel oil and lubricants that ocean-going vessels consume at sea.  In recent years, Aegean has experienced significant and continuing challenges to its business from low oil prices, depressed commercial shipping freight rates, collapsing profit margins, and fierce competition.  Aegean's financial performance is just one indicator of some of the stresses it has faced:  In the fourth quarter of 2016, Aegean recorded net income of $16 million; in the fourth quarter of 2017, the company recorded a net loss of $28.6 million.

As a result of these competitive challenges, Aegean sought to diversify its business lines and to acquire new sources of revenue.  To that end, Aegean identified as an acquisition target

HEC Europe Ltd., a privately-owned company headquartered in Cyprus with its main trading subsidiaries headquartered in Greece, Germany and Gibraltar, and with no presence in the United States.   Spurred by the growing international concern about – and the increasing governmental regulation of – maritime pollution, HEC owns and operates land-based and floating facilities that collect and treat wastes from ships, and that then strip out reusable oil from those deposits, and resell the recycled oil on the open market.

The acquisition of HEC is planned to create growth opportunities and synergies for Aegean.   In fact, as one independent stock market analyst observed about this transaction: "With the benefit of [Aegean's] own diverse network and global presence, [HEC] could potentially scale the operation across its platform, offering a full suite of services to shipowners – removing and reprocessing the residual fuel from one voyage while refueling for the next." (Clarksons Platou Securities Report, February 21, 2018, at 1).

When it identified HEC as a candidate for acquisition, Aegean formed a Special Committee of three independent directors – Messrs. Konomos, Papanicolaou, and Koutsomitopoulos – to review the transaction.   The Committee retained its own independent legal and financial advisors, conducted months of due diligence on HEC, and negotiated the terms of the contract.   The Special Committee's financial advisor issued a fairness opinion, concluding that the transaction was fair from a financial point of view to Aegean's shareholders.   The full Board retained its own financial advisor, which likewise issued an opinion that the transaction was fair.

The total purchase price for HEC is valued at $367 million (inclusive of a $42 million assumption of certain indebtedness).   This includes the issuance to HEC's shareholders of 20 million new shares of Aegean stock, which will dilute the currently outstanding shares of

Aegean by one-third.

The Share Purchase Agreement between Aegean and the sellers of HEC contains a provision that is critically important on this motion.  If the purchase does not close by March 27, 2018 – 35 days from the Agreement's signing on February 20, 2018 – then both sides are free to terminate the Agreement.

Plaintiff RBM Holdings is an LLC that was formed only last week for the sole purpose of bringing this action.  The principal of RBM is Tyler Baron, an investor who has long been vocal in criticizing Aegean's management.  In 2017 Baron created a "Committee for Aegean Responsibility" and later announced that he was proposing a slate of candidates (including himself) for election to Aegean's board of directors at Aegean's next annual shareholders' meeting.

## ARGUMENT

### 1.    RBM's Request for a TRO Is Meritless and Should Be Denied.

A party seeking a TRO "must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of the hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted."  *Free County Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016).   Even at this early stage of the case, it is plain that RBM does not satisfy even one of these requirements.

*First*, RBM cannot demonstrate that a TRO is needed to prevent irreparable harm. RBM's only asserted basis for claiming irreparable harm is that the HEC transaction somehow "interferes" with RBM's rights to vote on Aegean directors at the next shareholders' meeting. But this clearly is incorrect.  RBM and its members still will be able to do everything that Tyler Baron and his "Committee" planned to do.  They still can nominate director candidates of their

choosing, campaign for those candidates, solicit votes from other shareholders, and vote their own shares.

At most, RBM contends that its shares will be diluted. But RBM's three constituents currently own only 4.5% of Aegean's outstanding stock. Their voting power would thus be reduced to 3% - a difference of just 1.5%. Moreover, RBM is just speculating when it assumes that any shareholders beyond those who are members of RBM's "Committee" – who comprise just 12.7% of outstanding shares (*see* Form 13-D filed by Committee on Aegean Accountability at 2, dated March 8, 2018) – will vote for RBM's slate of directors.  (And if all of the members of the "Committee" had been included as plaintiffs in this action – as they likely should have been – diversity would have been destroyed and subject matter jurisdiction would be lacking.)

*Second,* RBM, an LLC created by three shareholders solely – and possibly collusively – to bring this action, cannot show any serious prospect of success on the merits. RBM alleges voter dilution and interference with shareholder voting rights, and RBM asserts that those are <u>direct</u> (and not derivative) claims.  But as a matter of law, RBM's claims do not qualify as direct dilution claims.  Those claims would be direct only if the issuance of stock to HEC's owners in connection with the acquisition caused an increase in the percentage of shares held by a majority shareholder or a shareholder who otherwise controlled the corporation.  *F5 Capital v. Pappas*, 856 F.3d 61, 73-74 (2d Cir. 2017).  Here, however, the shares will be issued not to any controlling shareholder of Aegean, but rather to HEC's owners.

As for RBM's claim of interference with voting rights – a so-called *Blasius* claim – RBM must demonstrate that the "primary purpose" of the transaction is to "interfere with or impede exercise of the shareholder franchise."  *MM Cos. v. Liquid Audio, Inc.*, 813 A.2d 1118, 1130 (Del. 2003), *citing Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651 (Del. Ch. 1998).  That

4

is not remotely our case.  The HEC transaction is a compelling and critical business deal, and not – as is required under *Blasius* – a defensive maneuver designed to thwart a perceived voting threat.  The acquisition is a synergistic business transaction that strengthens Aegean's prospects for success in a very challenging industry-wide environment.  Moreover, the transaction was initiated and under negotiation long before the so-called "Committee" was formed and long before there was any notice of the group's intention to nominate director candidates.  *Blasius* has no application here. *Yucaipa American Alliance Fund II, L.P. v. Riggio*, 1 A.3d 310 (Del. Ch. 2010) (the "trigger under *Blasius* is as extreme as the standard it invokes").

Once the false façade of RBM's claims is stripped away, it is clear that RBM's claims are, at bottom, derivative and not direct.  *F5 Capital*, 856 F.3d at 72 (finding that the typical claim of equity dilution is derivative in nature, because "the alleged injury is to the corporation" and "falls upon all shareholders equally and falls only upon the individual shareholder in relation to his proportionate share of stock as a result of the direct injury being done to the corporation"). To prosecute such a derivative claim, RBM must show that a demand on the Board would have been futile.  *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).

RBM's pleading did not and cannot allege demand futility.  RBM would have to plead and prove that the independent directors who approved the transaction were not disinterested; and RBM's allegations in the complaint do not come close to the exacting standard required to establish that directors were interested. *See In re ITT Corp. Derivative Litig.,* 588 F. Supp. 2d 502, 511 (S.D.N.Y. 2008) ("Whether the Directors face a substantial likelihood of liability must be determined on a director-by-director basis, and thus Plaintiffs' conflation of all the directors into a single entity is insufficient under Rule 23.1."); *see also Transeo S.A.R.L. v. Bessemer Venture Partners VI L,P.,* 936 F. Supp. 2d 376, 396-97 (S.D.N.Y. 2013) ("[T]he [complaint]

KL3 3161162.1

does not specifically allege that any potentially interested director . . . would have received a personal benefit . . not equally shared by the shareholders. The [complaint] thus does not plausibly allege interestedness.").   RBM likewise has not sufficiently alleged that Aegean's decision to acquire HEC should be denied deference as a proper business judgment – and doubly so, in light of the transaction's numerous benefits and synergies as well as the fairness opinions issued by two respected financial advisory firms.

*Third*, the balance of hardships weighs decisively in Aegean's favor. The transaction RBM seeks to enjoin is essential to Aegean's ability to succeed, in the face of the significant financial and regulatory pressures in the oil shipping industry. A small minority – holding 4.5% of Aegean's stock – should not be permitted to inflict hardship on the Company and the holders of the vast majority of its shares.

And *fourth*, the public interest would be disserved by injunctive relief.  As the Supreme Court has noted, in an increasingly global economy our courts should take care to avoid unreasonable "interference with a foreign nation's ability independently to regulate its own commercial affairs."  *F. Hoffman-La Roche Ltd. v. Empagran SA*, 542 U.S. 155, 165 (2004). The Aegean-HEC transaction is between two foreign companies, both of which are organized under foreign law.  Moreover, three of the individual defendants have not yet been served, they live and work in Greece, and they likely are not subject to personal jurisdiction here.  Indeed, because this case is centered in Greece, not here, there is a substantial question whether this case should be dismissed on *forum non conveniens* grounds.   *See In re Alcon S'holders Litig.*, 719 F. Supp. 2d 263 (S.D.N.Y. 2010) (dismissing on *forum non conveniens* grounds a challenge to merger of two Swiss corporations, even though the target was listed on the New York Stock Exchange).  At the very least, this Court should be wary of exercising its injunctive power in

matters which, like this one, are centered in a foreign country.

**2.      RBM's Proposed Schedule Unfairly Prejudices Aegean.**

It was not until March 8, 2018 – sixteen days following the public announcement of the HEC acquisition – that RBM filed this lawsuit and its application for a TRO and preliminary injunction.  Within hours of appearing in Court before Judge Hellerstein on March 8, we told RBM's counsel that it was critical to Aegean that any motion for a preliminary injunction be resolved by March 27, 2018, because as Aegean publicly disclosed on February 22, if the transaction does not close by that date, HEC's sellers are free to cancel the transaction.  *See* Aegean's Form 6-K filed Feb. 22, 2018, Exhibit 10.1 at 11.  RBM's counsel did not respond to Aegean until two days later, and then they proposed a discovery schedule that stretches out for more than six weeks, a briefing schedule that goes on for three weeks, and a preliminary injunction hearing that takes place in the last full week of May.  RBM also proposed that Aegean agree to a so-ordered stipulation that would bar a closing on the HEC acquisition until the preliminary injunction hearing has concluded.

Any schedule that bars Aegean past March 27 from proceeding with the HEC acquisition – let alone two months beyond March 27 as RBM has proposed – will inflict on Aegean substantial and irreparable harm.  Aegean thus urgently needs a resolution by March 27, to avoid the prospect that the transaction will be cancelled.

In considering the schedule, it is worth noting that, although claiming that temporary relief is needed immediately, RBM waited sixteen days after Aegean announced the transaction before filing the lawsuit and TRO application. Beyond that, RBM's proposed schedule runs afoul of Rule 65, Fed. R. Civ. P., which provides that a TRO may be issued only for 14 days and then renewed only for another 14 days unless the defendant agrees to a further extension. Thus, even if a temporary restraining order were entered today – and Aegean strenuously

KL3 3161162.1

opposes that application in every respect – the TRO could not last longer than 28 days, or until April 9. *See MPD Accessories B.V. v. Urban Outfitters, Inc.*, 2013 U.S. Dist. LEXIS 182083, at *13 (S.D.N.Y. 2013) (in our Circuit, TRO entered on notice may last only 14 days, with one 14-day extension).

A proper schedule, therefore, would allow the Court to resolve the preliminary injunction motion before March 27, 2018, the date when the transaction becomes subject to cancellation. Accordingly, we propose that the defendants file their oppositions to the motion on March 19, 2018; that RBM file any reply on March 21, 2018; and that subject to the Court's calendar, the hearing on the preliminary injunction be held on March 22 or 23, 2018.

**3.      RBM's Motion for Expedited Discovery Should Be Denied**

RBM's proposed schedule provides for three weeks for document production and another three weeks for "depositions." Although Aegean announced this transaction three weeks ago, RBM has yet to serve any discovery requests.

Courts employ two tests for considering a request for expedited discovery. The first applies a "reasonableness standard." *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011). The second requires a showing of "(1) irreparable injury (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted." *Id.*

RBM has not demonstrated irreparable injury, or a probability of success on the merits, or hardships weighing in its favor. *Rosecliff, Inc. v. C3, Inc.*, 1995 WL 3024, at *3 (S.D.N.Y. Jan. 3, 1995) (denying expedited discovery in corporate ownership dispute because plaintiffs not likely to succeed on merits). RBM also has not articulated any genuine need for expedited

8

discovery.  RBM contends in its Motion (at 1) that discovery will "identify the extent of the nefarious conduct surrounding the proposed transaction."  This is a nice way for RBM to say that it needs a fishing expedition to try to find evidentiary support for its claims.

Should the Court nevertheless find that some expedited discovery is warranted, any such discovery should be narrowly tailored and limited to the relevant Board and Special Committee minutes and transaction documents.

## CONCLUSION

For these reasons, Plaintiff RBM Holdings' application for a temporary restraining order and expedited discovery should both be denied.  In addition, RBM's motion for a preliminary injunction should be scheduled so that it can be resolved before March 27, 2018.

Dated: New York, New York
        March 12, 2018

/s/ Arthur H. Aufses III _____
Arthur H. Aufses III
Jonathan M. Wagner
Jason M. Moff
KRAMER LEVIN NAFTALIS &
   FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 715-9100
Fax: (212) 715-8000
aaufses@kramerlevin.com
jwagner@kramerlevin.com
jmoff@kramerlevin.com

Attorneys for Defendant Aegean Marine Petroleum
Network Inc.

KL3 3161162.1